1842 15 United States of America versus Robert Scheiblich. Oral argument is not to exceed 15 minutes per side. Miss Young for the appellant. Good afternoon. Please support me on behalf of the United States. I'd like to reserve three minutes for rebuttal. Very well. The United States appeals the sentence imposed on defendant Robert Scheiblich for his commission of an offense under 18 U.S.C. 922 G. Mr. Scheiblich pled guilty to possession of a .357 revolver and the United States challenges the district court's rejection of a cross-reference under guideline 2 K 2.1 C1. The United States believes that cross-reference should apply here because the defendant and his son possessed and used the .357 revolver in transporting a severely injured assault victim to the roadside where they abandoned him and left him for dead. You're focused on the time after they leave the house. Exactly. For purposes of this appeal. There's a distinction between use and possess. Either one gets you the application of the guideline. Just so. What's your theory as to use? The evidence indicates that a shot was fired at the roadside and also that it was the .357 revolver that was present at the roadside. Firing a shot behind the head of an assault victim in the course of forcibly removing him from a vehicle and abandoning him at the side of the road we think constitutes use. But as your Honor notes, if it is a leased possession and if it is possession, it certainly facilitates or has the potential to facilitate that abandonment. We know that in your view, we know there's a shot at the roadside because somebody makes a phone call to that effect. Several pieces of evidence, Your Honor. So first, the victim himself reported to officers who responded to the scene that he had been brought to the roadside by the Shyblicks after having been beaten at their residence. And according to the victim, Dylan, which is the son, removed him from the vehicle and in the victim's perception, actually shot him in the head. So that proved to be an error. He had a severe head injury, but it wasn't from a gunshot. But certainly the victim's perception identifies a firearm at the scene and a gunshot. Other evidence of the gunshot. After the arrest, the defendant himself spoke to his cellmate, Thomas Gabriel, and that interview was played at the sentencing hearing, the interview with Mr. Gabriel. According to Mr. Gabriel, Mr. Shyblick told him that Dylan, his son, was supposed to shoot Mr. James, the victim, in the head, but actually shot right behind the head. So there too, that confirms a gunshot at the scene. Is it your view that we should apply the standard and find clear error? I guess you would concede that the standard is clear the erroneous application of the guideline? So for guideline application, it's clear error as to the facts, de novo as to the legal issue, and due deference to the application. So here, the question of whether this was the .357 that was present at the roadside is, in our view, a pure question of fact. So that's a clear error standard. We think there's also legal error, particularly in the written opinion. The district court misunderstands what's required for the nexus by treating an emboldenment theory as applicable only to drug offenses in the form of the fortress theory. That legal error may have contributed to the non-application of this as well. The court almost didn't get to the last step, although it did, particularly in the written opinion, in terms of saying that nexus wasn't demonstrated. But there were antecedent errors on the factual and legal piece. I guess if you find a legal error, then the conclusion should be, we articulate what the appropriate legal test is for this guideline, and then remand for the district court to apply that test in the first instance, versus, I think you're... I think that's right, Your Honor. Your Honor, if it were not accompanied by sort of independent factual error here, the United States would urge at a minimum that any remand be styled to correct both the legal error in terms of the standard for nexus and what the United States argues is a clear factual error in terms of whether on the record in front of it, it was established that the .357 was at the roadside. What would be the point of remanding it back if we were to do what you said in the second part of what you said? Doesn't that then pre-termit the answer here? Well, at a minimum, of course, there will be a remand for application of the .3553 analysis. In the United States' view, this court could go one step further and say, under the correct view of the facts and law, only one conclusion would be permissible, which is that a cross-reference should have applied because the nexus should have been found. So that's what you want, but you'll take... That's what I want, but at a minimum, fix the two underlying issues. So the district court, at least the written opinion, six or so pages, or maybe a little more than that, was on the application of the guideline, but most of the discussion was on the district court's skepticism of finding relevant conduct consistent with the Sixth Amendment. And we have cases suggesting that a district court, as a matter of policy, can refuse to find relevant conduct, just like our White decision, the en banc decision. If a court, just as a matter of policy, disagrees with the notion that it should be using judge-found facts to increase a sentence. So is all this for nothing? Because if we remand, couldn't the judge just say, fine, the guideline applies under White, I'm allowed to depart from it because I think that it raises serious constitutional questions? What would the government's position be that that would... That's under the .3553A factors, or where would that lead us? The United States would hesitate to jump too far ahead into that hypothetical, but that is what Your Honor is describing is clearly not what the district court did here, to the extent that it could have correctly applied, calculated the guidelines, and then, for policy-type reasons, varied downward. Whatever the answer to that question is, and the United States reserves the right to argue about that should it become necessary, that's not what happened. Would you agree that the district court did not clearly err when the court found, as a factual matter, that the revolver was not used in the pistol whipping? I mean, clear error review, it means something. We have not focused solely on that fact for a reason. So would you agree that... But we certainly, we believed that the record established that, and it was the better view of the evidence, but we're not arguing based solely on that, that there's clear error. Okay, now I understand you have different arguments, but I'm asking about the application of our standard of review. Would you agree that that's really sort of a bit too far to say, on this record where there's no DNA on the weapon that was allegedly used to strike the back of his head and inflict a serious injury, that the absence of any DNA there really precludes a finding that the district court clearly erred on that part of the factual analysis? The United States is not urging this court to find clear error based on the pistol whipping. Okay. But believes there is, the record requires a finding of clear error as to other aspects of the conduct. No, I certainly understand your argument there. My understanding is that, I'm just trying to remember where this fits in the fact pattern. Schaiblich himself, at some point, after they leave the victim by the side of the road, somebody asks, maybe Spradlin gets in the vehicle or something? Spradlin gets in the vehicle. So, in addition to the assault mate, the court heard the interview from Mr. Spradlin, who was at the residence, he saw the firearm at the residence, and then he went home. They picked him up later after abandoning the victim. He's chatting with him about, so what happened? Schaiblich holds the gun up, the .357 revolver, according to Spradlin, and says, we took care of it. So that's in the 90-minute interval between dropping off the victim and getting pulled over by the police. Correct? Yes. Okay. In addition to the three statements, the victim's statement, the assault mate, Mr. Gabriel, and Mr. Spradlin, we do have the fact that there's 911 calls reporting gunfire at the scene. Now, of course, those calls don't say it was a .357 revolver. Yeah. And the fact, let's not forget, the .357 revolver is found in the vehicle with the defendants, the same vehicle the victim says dropped him off 90 minutes later with one spent casing. Didn't they also find a bullet in a fence near where this happened? They did not find a bullet. They found a hole, a hole in a fence. So that's part of the factual picture. For these reasons, the United States believes that the record below required application of cross-reference and would ask this court to remand for resensing. Can I ask one just clarifying question on the standard of review? What's the United States' position on if there is any difference between clear error and due deference? How would you describe, is it less, is due deference less than clear error, more than clear error? So I think if you track back, due deference sort of originated in the Supreme Court's Buford decision, and I guess before that, actually, in statute 3742, I suppose, that what deference is due will depend on the nature of the question. And in Buford, the court actually looked at, you know, is this the kind of thing where a district court would have expertise? Does a district court see a lot of this kind of thing? So I don't know that there is a single due deference standard. What would you say would be here? Would you say whether a gun was used or possessed in connection with another offense? That seems fact-boundish. So would it be close approaching clear error review? I think somewhat less deferential than clear error review, perhaps. I tend to think of due deference in that way. But again, we're not, the question, well, and even if it were, frankly, clearly there's an excess here. If someone has got a firearm in a vehicle, has got a kidnapping victim, under any standard of review, the excess was satisfied. Okay. You'll have your rebuttal. Thank you. We'll hear from Mr. Benton. Good morning. Good afternoon. May it please the Honorable Court, my name is Frederick Benton. I'm here representing Robert Scheiblich, and also stand in defense of the well-written and reasoned opinion published by the Honorable Judge Algernon Marbley. This is a case, as in all cases, where the trial judge made certain factual findings. Those factual findings must be accepted by this panel, unless there is a finding that those findings were clearly erroneous, and that is certainly not the case here. Those factual findings also must be given due deference, which is, again, what is appropriate in this particular matter. The challenge that the government faces, is that the government has posited a series of theories regarding what supposedly happened during that particular event. Their theories have consistently shifted, even up through the point of their appellate briefings, and I would suggest even in terms of their oral presentation. They first began with the thought, that my client and or his son was involved in the actual shooting death of Jesse James. Well, that was determined to be inaccurate. The medical records in the coroner's report clearly established that his injuries is not disputed. Then they moved on to say that the firearm was used in a pistol whipping inside of the residence, and even presented various photographs of a very bloody scene. But there was no evidence of that having taken place, and in fact there was a bloody scene, but the government later concedes that the firearm was not used in that instance. So now they shift to the location where the body was found, and the claim at that point is that, one, there was a gunshot. There was absolutely no evidence to establish that a gunshot was fired. There was no bullet found. The hole in the fence. How can you say there's no evidence? You have the testimony from the victim who subsequently died. Not testimony is the wrong word, but somebody told the police. You have people that hear a gunshot, and you find a gun in the car of the people that abducted this guy. You can argue about the significance of that evidence, but how can you possibly say there's no evidence? By this factor, Your Honor. First of all, the 9-1-1 reports was that there were several shots that were fired. There was no evidence to establish that several shots were fired with the use of that firearm. Secondly, Jesse James' statement to the police was that he had been shot in the back of the head. There was no physical evidence to establish that he was shot in the back of the head. In fact, two medical examiners have determined that that to have been totally inaccurate. You find nothing in Congress about suggesting that somebody that either gets pistol-whipped in the back of the head or shot near the back of the head, you draw conclusions that they should be able to tell what caused the injury in the back of their head? Well, there's a difference between saying, and this is just my point, if someone was shot at, it seems to me that they would say I was shot at as opposed to the fact that I was shot. And again, the medical evidence does not support that. Also, to further advance- So if a shot is fired near the back of somebody's head, and contemporaneous with that, it gets whacked in the back of the head with a pistol, you think we should draw significance from the fact that the person can't distinguish between those two? I would for this reason, that there's no physical evidence that correlates or substantiates that claim. Not only do you have the absence of any physical evidence with respect to a shot having been inflicted, a shotgun wound having been inflicted on this individual, you also have the absence of any forensic evidence relative to the firearm to establish that there was any of Mr. James' DNA. So are you questioning whether he was pistol-whipped or whether he was pistol-whipped with this particular pistol? Well, their focus is relative to- I'm asking you. I understand that. But the focus that the government has made is relative to the scene where this individual was found. There was no evidence that he was pistol-whipped at the scene. There was no evidence that he was shot. You started your argument out by referring to the well-reasoned opinion of the district judge, which you want us to give full credit to. He says he doesn't have any reason to doubt that James was pistol-whipped. That's what the judge found. But that's a finding relative to what took place at the residence, at the St. Jude residence. But the whole argument here, as I understood it, so correct me if I don't understand this, is that if somebody was pistol-whipped at the residence and that was the injury that caused him to be bleeding on the side of the road, that it's inconceivable that there would be no blood found in the car. Absolutely. So if he concludes that he was pistol-whipped but there's no blood in the car, what would be the basis of a conclusion that that pistol-whipping, assuming that the judge is right, didn't occur at the side of the road? Because there's a lack of physical evidence that would support that. And one of the emphases that the government relied upon. So does this turn on then whether there has to be physical evidence, or can we or the district judge be looking at whether the whole panoply of evidence? Well, I would suggest under either analysis, whether you look at the specific evidence or the whole panorama of evidence, it still comes down to an assessment by the trial court as to the credibility of the government's presentation. And Judge Marbley was troubled by the government's conclusions or requested conclusions that invited the court to engage in a leap of faith as to adopting certain positions that they sought to advance. I thought that what do you do with your client's own statements, both to the prison informant and to Godden or Spraedman, that he said we've taken care of it when he pulled the gun out of the dashboard. That's what Spraedman said. And then the prison informant said that your client said his son was supposed to shoot him, but instead shot him. I mean, as long as you credit it, and the judge didn't just ignore this evidence as far as I can tell in his opinion, if you credit that, that itself is a pretty damning admission that a gun was possessed in connection with the kidnapping or attempted murder. Except Judge Marbley did not rely upon either statements in making his findings. He found a number of inconsistencies with respect to, I can't remember his name, the gentleman who was in the jail, Mr. Thomas. One of the things that Mr. Thomas said was that supposedly my client made the representation that they had taken the body, dumped him somewhere, and it froze to death. That did not happen. So you had a number of inconsistencies. But where in the record, I could see that it's a credibility question about whether your client actually said these things to these individuals. But I don't see anywhere in the record, and correct me if I'm wrong, where the district judge actually made a credibility finding with respect to whether he did or did not make these statements. Well, what the judge did say in his ultimate conclusion was that the government failed to present credible evidence that supported his claim that would include both the statements made by Mrs. We just assume that he made a credibility determination that these individuals were not credible? Yes, because of the fact that, again, if you look through the transcript of that hearing Is it because if you actually credit the statements, it's basically damning evidence that it wasn't? No, it's not because of my representation, although I was certainly urged that upon the court. It's because of the evidence. It's his own admission that the gun was used or possessed, at least in connection with these offenses. But when the government sought to direct the court's focus on those particular statements, particularly the statement as it relates to my client, the judge found that the statement that supposedly Mr. Spradlin made as to my client saying that he had a gun and he took care of it, as being mere puffering, he did not find that to be persuasive or relevant to his analysis with respect to the factual findings that he made. So what Mr. Murphy is asking you, if we have evidence that your own clients held up the gun in question and said we took care of it, so now we have that gun in his hand, not very long after the incident, what the judge seemed to then be saying, well, let me say it a different way. After discounting the lack of a nexus between the gun and the pistol whipping or the shot behind the head, he then goes on to say that mere possession of the gun enabling him to participate is even less tenable. The law simply does not support it. That's just flat out an incorrect statement of the law. So what do we do with that? I disagree that it's an incorrect statement of the law. The judge heard the testimony, not only as to that, but also as to the entire presentation, and the judge simply found that that line of evidence was not worthy of belief because of the overall inconsistencies relative to the government's presentation during the course of the hearing. Do you agree or do you dispute that the weapon was in the vehicle during the time of the kidnapping? The weapon was found in the vehicle at the time of the stop. Are you disputing, though, that at the time they're driving him to the roadside and put him out on the roadside, the kidnapping is ongoing? At that time, 90 minutes before the time you just mentioned, that the weapon is in the vehicle? Do you dispute that? The court will not. I will not concede to kidnapping, nor do I concede that the weapon was in the vehicle at the time of the alleged kidnapping. What you have is a time period of several hours, as mentioned by Mr. Spradling. I thought it was 90 minutes. No. He said there were several hours had gone by between they dropped him off and then when they returned to pick him up. Then he comes back and he says that when they picked him up, it was within about, I believe it was 90 minutes, that the police ended up stopping the vehicle and the weapon was recovered. Okay. But the weapon is found in the vehicle. Yes, it was. There's no testimony or evidence that your client went back to his house or something. I mean, it just appears they were driving around. Is that fair? There's no evidence in the record as to what took place during that several-hour time period during which time the weapon could have already been in the vehicle or it could have been placed in the vehicle at a later time. The record is devoid of that. The argument then is that the government didn't establish that this firearm facilitated or had the potential of facilitating an offense because they couldn't prove that that weapon was in the car at the time somebody did something to him and left him by the side of the road? Exactly. The district court's getting a more thin ice. I mean, wouldn't you agree that the district court's on thinner ice in saying, if it did, that the weapon is not in the vehicle during the time that the victim's in the vehicle as opposed to the weapon was not used to pistol whip? I mean, here, you know, the pistol whipping, I hear you on the DNA. Here, the extant evidence is it was in the vehicle a relatively short time later. There's a casing somewhere in the vehicle. No, there's not. I thought there was a spent casing. It was not a spent casing. Where was that? This was a revolver. Right. So you had the spent casing inside the revolver itself. Okay. It was not found independently. Okay, right, right. Okay, no, thank you for that correction. I mean, I'll be candid with you. I think it's closer to clear error if the court is saying the weapon is not in the vehicle on this record. I provided a response as to my conclusions, my assessment, not as to what the district court found. Oh, I know. It would be my understanding that the district court, in making its findings, concluded that the weapon was, in fact, there during the time of the English kidnapping. So, but if the weapon is in the vehicle, I mean, doesn't that, doesn't the presence of the weapon, let's just set aside the fortress theory and, you know, just as a practical matter, doesn't having a weapon in a vehicle facilitate retaining custody, so to speak, of somebody who doesn't want to be there? I understand the argument, Your Honor, but I would suggest this. The evidence was that at the time that the police stopped the vehicle, that the weapon was retrieved from the center console of the vehicle. It's often there. You also have, if his statement is to believe, that of Mr. Spradlin, who said that at the time that this revolver was revealed to him, it was also pulled out of that center console. Right. Now, mind you, Mr. Spradlin was not there during the relevant time that focuses upon this particular roadside event. But with that having been said, there was no other evidence, other than the mere presence of the firearm inside that console that was displayed or otherwise used, other than the allegations of a shot being fired, which is not supported by the evidence. But, I mean, the government doesn't have to show just use. Possession in connection with is enough. I understand that argument, Your Honor. And, you know, and that's just this facilitation business. And, you know, if you're trying to hold somebody against their will, all things being equal, it's easier to do if you have a gun, I would assume. I would concede that. I would concede that. So, I mean, if it's in the vehicle, why doesn't, why isn't it facilitating? Well, again, I would contend that Judge Marbley, in engaging in a full evidentiary hearing that lasted several hours, made an assessment of all the relevant facts and drew the appropriate conclusions, and that his findings are entitled to that due diligence, due deference, excuse me. He didn't find that the weapon wasn't in the car. No, I didn't say that. His opinion is silent about what he might have thought about that. He goes on to basically say that doesn't matter because the fortress theory is limited to drug-related offenses. Well, that would. Do you concede that he at least is in error there? Well, I was. Lots of cases where we apply that theory when it doesn't involve drugs. I would agree with that. But I would also suggest this to the Court. Judge Marbley did not make his decision based upon a conclusion that the fortress theory did not apply. He made that statement, but he also went on to say that the government still failed to provide the underlying facts sufficient to establish a nexus that would have allowed him to conclude that the weapon facilitated the underlying offense. All right. Thank you, sir. Thank you very much, Your Honor. All right. Your rebuttal. Just a few points. Of course, the obligatory reminder that we do not concede the firearm was not used at the home. We are not focusing on that for purposes of appeal. We very much think the firearm was used at the home. Different questions, different standards of review there. So certainly no concession on that point. The United States does not perceive anything the district court did to be based on any adverse credibility determination. In fact, the district court seemed to credit, at least hypothetically credit, the United States' evidence and find it inadequate to warrant application of the cross-reference. So on the contrary, we certainly don't think that there's any adverse credibility determination on this record. Just wanted to reflect on the factual scenario that would be necessary under my friend's understanding. We have strong evidence of a gunshot on the roadside. We have clear evidence, of course, that the firearm was found in the car 90 minutes later, the 357. On that point, Mr. Benton says it's 90 minutes after Spradlin gets picked up, and Spradlin didn't get picked up for a while. No, I think I understood what he said. Mr. Spradlin was taken from the residence hours before he was again picked up by the shinebooks. As I understood, that's what Mr. Benton was referring to. It is clear from documentary evidence, the 911 calls and the traffic stop. That is a 90-minute interval. Okay, between the 911 call and the traffic stop. Correct. And I didn't understand Mr. Benton to be suggesting that. Well, I assume you agree with the judge's observation that there isn't any evidence that would suggest that Scheiblich possessed another gun in addition to the one that was charged in the incident. Exactly so. And in Mr. Benton's understanding, there's some gun in the car 90 minutes earlier. During that 90 minutes, what, he went and switched out guns? Let me not only get rid of the gun that Dylan shot, but let me pick up a 357 with one. He's not conceding there was any gun, as I understand it. Well, but the evidence does so indicate there's a gunshot. All right, but let's say that's not as powerful as you think. The evidence in favor of a gunshot, 911 call, decedent's statement. Let's just hypothetically say that doesn't get you to clear error. What evidence do you point to for the gun being in the vehicle at the time of the, you know, they drive him to the road, as opposed to when he's later picked up by the police, the 90 minutes later? To begin, 90 minutes later, I understand, but the district court said that 90 minutes later it was entitled to, quote, no weight, which can't be right. Beyond that, Mr. Spradlin recounts that the defendant himself holds up the 357 and says we've taken care of it. And there's no evidence to the contrary. This is a preponderance standard. So the real argument is his statement about he gave no weight whatsoever to the additional evidence. What you really want us to do is to remand it back, say that he's got to at least consider the other evidence and that he's wrong about the fortress theory. Is that basically it? That would be the least. Yes, the United States actually thinks that the record requires application of the cross-reference. But if this court has discretion in the scope of remand and the minimum sort of things that need to be corrected to go forward productively, I think are the legal standard and these points about not giving weight to that evidence. As Your Honor pointed out, it's not clear because of this mistake on the legal nexus question. Did the court make a finding that it wasn't in the car? Or was it not even thinking about the question of whether it was in the car because it was confused about the legal standard? All righty. Thank you both for your arguments. The case will be submitted.